| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ X<br>DOLORES JOHNSON,<br><br>                            Plaintiff,<br><br>              - against -<br><br>UJA FEDERATION OF NEW YORK,<br><br>                            Defendant.<br>------------------------------------------------------------ X | **NOT FOR PUBLICATION**<br><br>**MEMORANDUM & ORDER**<br><br>10-cv-05648-ERK-VVP |

KORMAN, J.:

      Dolores Johnson has been employed for various periods, beginning in 1977, by the Jewish Child Care Association, Inc. ("JCCA"), a participant in the Retirement Plan for Employees of United Jewish Appeal-Federation of Jewish Philanthropies of New York, Inc. and Affiliated Agencies and Institutions (the "Plan"). On November 12, 2010, Johnson filed a complaint against the UJA Federation of New York ("UJA") in New York State Supreme Court asserting that she is entitled to more benefits, as a participant, under the Plan sponsored by the defendant. Johnson's complaint seeks pension credits for her service during the following periods: (1) 1977 to 1981; (2) July 1987 to September 1989; (3) January 1994 to 1995; and (4) July 7, 1995 to June 30, 1996. *See* Compl. On December 7, 2010, asserting preemption by the Employee Retirement Income Security Act of 1974 ("ERISA"), the defendant removed the case to this court. After completion of discovery, both parties moved for summary judgment.

## FACTS

### A. Local Rule 56.1

      Defendant argues that plaintiff's motion for summary judgment should be dismissed for failure to submit a statement of undisputed facts pursuant to Local Civil Rule 56.1. Def.'s Opp. Br. 2. Under this provision, a moving party must annex to its notice of motion for summary

1

judgment, a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Local Rule 56.1(a). Despite plaintiff's counsel's failure to abide by this rule, this defect is not fatal in this case because (1) plaintiff annexed an Affidavit of Facts to her summary judgment brief, (2) the defendant submitted a clear and concise Rule 56.1 statement with its motion for summary judgment,[1] (3) this case is not factually complicated, and (4) the facts are easily discerned from the administrative record, which is relatively short. Thus, in the interest of expedition and finality, I overlook this omission and rule on the motions after conducting an "assiduous review" of the record. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement") (internal quotation omitted).

B. **Undisputed Facts**

1. The Plan

The Plan, which provides retirement benefits to eligible employees, was amended and restated effective October 1, 1989 to provide different plan provisions for non-union (Part A) and union employees (Part B). *See* Hirschhorn Decl. Ex. A, at D00273-74; Ex. B, at D00409. Under the October 1, 1989 amendment, non-union employees were no longer required to contribute to the Plan as a condition of participation and benefit service crediting. *Id.* Employees are eligible to participate in the Plan after one year of service. *Id.* at Ex. A § 3.1; Ex. B § 3.1. Participants'

---

[1] The plaintiff has also failed to file an opposition to the Defendant's Rule 56.1 Statement. Under the local rule, the defendant's statement of material facts would be deemed admitted due to plaintiff's failure to oppose. Local Rule 56.1(c). Nevertheless, in the interests of justice, I conduct an "assiduous review" of the record to discern the undisputed facts.

pension benefits are calculated based upon a formula consisting of years of credited service and final average earnings. *Id.* Ex. A § 5; Ex. B § 5.

The Board of Directors, which is responsible for administering the Plan, delegated to the Pension Subcommittee the responsibility for interpreting the Plan's provisions. *Id.* Ex. A §§ 14.1 & 14.2; Ex. B §§ 14.1 & 14.2. "The determination of the Pension Subcommittee, which shall be made by such Subcommittee in its sole discretion based upon the Plan documents, as to any question of interpretation shall be final, binding and conclusive on all interested persons including, but not by way of limitation, Employees, Participants, their Beneficiaries, heirs, distributees and personal representatives and any other person claiming an interest in the Plan." *Id.* at Ex. A § 14.2; Ex. B § 14.2.

The Plan establishes a two-level procedure to handle claims for benefits. *Id.* Ex. A at § 14.6; Ex. B § 14.6. All initial claims for benefits are submitted to an individual designated by the Pension Subcommittee (the "Initial Claims Reviewer") to review claims for benefits. *Id.* If the Initial Claims Reviewer partially or wholly denies a claim, he must provide written notice to the claimant, which includes "the specific reason(s) for the denial, specific reference to pertinent Plan provisions on which denial is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, and appropriate information as to the steps necessary to be taken if the claimant wishes to submit the claim for further review." *Id*.

The claimant may request the Pension Subcommittee review any denials by filing a written request within 60 days after receiving the Initial Claims Reviewer's written decision. *Id.* After holding any hearings necessary or conducting any independent investigation necessary to render its decision, the Pension Subcommittee provides a written decision, including "specific reasons" in the event of a denial. *Id.* The Plan specifies that all decisions -- of the Initial Claims

3

Reviewer, when no review is requested, and of the Pension Subcommittee, when a review is requested, "shall be final, binding and conclusive on all interested persons as to participation and benefit eligibility, the Participant's amount of Compensation and as to any other matter of fact or interpretation relating to the Plan. All decisions on claims shall be made by the Pension Subcommittee in its sole discretion based on the Plan documents and shall be final and binding on all Participants, Beneficiaries and other persons and entities." *Id.*

2. Plaintiff's Employment History

Johnson's initial period of employment with the JCCA began in 1977 and ended in 1981. Hirschhorn Decl. Exs. G & H. The JCCA rehired Johnson in a non-union position on July 12, 1987. *Id.* Although there was initially a dispute on the exact date of her termination during this period of employment, the parties now agree that this period of employment terminated in January 1995. *Id.*; Hirschhorn Decl. Ex. N. Johnson resumed employment with the JCCA in July 1995 and remained until June 1996. *Id.* Johnson was again rehired in a union position on June 18, 2000 and remains employed by the JCCA. Defs.' R. 56.1 Statement ¶ 11.

3. Administrative Record Below

Johnson filed a written claim with the Plan, dated March 11, 2006, seeking additional pension credits for her employment during the following periods: (1) October 1978 to October 1981; (2) July 12, 1987 to September 30, 1989; (3) January 1994 to January 1995; and (4) July 1, 1995 to June 30, 1996. Hirschhorn Decl. Ex. H. In the letter, Johnson alleged that she was entitled to credits for these periods because (1) she had submitted paperwork to join the Plan when she was first employed by the JCCA in 1977; (2) the JCCA deducted pension contributions from her under the name of Mt. Pleasant Cottage School Union Free School District ("Mt. Pleasant School District"), as indicated on the 1979 W-2 issued to her by the Mt. Pleasant School District; (3) when she was rehired in 1987, she was told she would be enrolled in the non-union

4

pension plan; (4) documentation showed that her employment with the JCCA terminated in January 1995 (not January 1994), and she was rehired from July 1995 through June 1996. *Id.*

The Initial Claims Reviewer's written decision, dated June 19, 2006, granted in part and denied in part Johnson's claims. Hirschhorn Decl. Ex. J. First, he determined that the JCCA had not deducted pension contributions from Johnson under the name of Mt. Pleasant School District, nor had it remitted any deductions to the Plan. *Id.* "As its name discloses, the [Mt. Pleasant School District] is a public school district. It is separate and apart from JCCA, which is a private not-for-profit corporation." *Id.* at D00098. Moreover, the Initial Claims Reviewer noted that Johnson, on March 15, 1989, had "signed and dated a Retirement Plan Waiver of Enrollment Form," ("Waiver") which states that, "I, Dolores Johnson, waive my right to enroll in the Retirement Plan at this time." *Id.*; *see also* Ex. J, Attachment A. He deduced, therefore, that as of March 15, 1989, "[Johnson] knew that [she] had not been a member of the Retirement Plan, and did not intend to join it." Ex. J, at D00098. The Initial Claims Reviewer accepted Johnson's proof that she had continued to work for the JCCA until January 1995 and credited her an additional year of service under the plan. *Id.* He then dismissed Johnson's claims for additional benefits under § 2.02(d) and (f) of the Plan, which provides that,

> Failure of an Eligible employee to file [an] application within the time stated . . . shall constitute an election not to become a Member and a waiver of all benefits under the Plan, except . . . . [an] Eligible Employee who has not become a Member as of his first eligibility date may upon any subsequent Entry Date become a Member in the same manner as an Employee than becoming eligible for the first time, but with no credit . . . prior to his date of membership.

*Id.* at Attachment B.

Johnson filed an appeal with the Pension Subcommittee on August 10, 2006. Hirschhorn Decl. Ex. K. She reiterated most of the same arguments on appeal and requested the same benefits as in her initial claim. *Id.* On appeal, she also contended that (1) the March 1989

5

Waiver was irrelevant because she was requesting credit for years prior to 1989, and (2) the 1979 W-2 form issued by the Mt. Pleasant School District shows that no FICA taxes withheld, and therefore, proves that these were in fact pension contributions the JCCA deducted from her wages. *Id.* The Plan Administrator filed a written statement of its position with the Pension Subcommittee, dated December 5, 2006, stating that, based on Johnson's evidence, she was entitled to two additional years of credit covering her service from January 1994 to 1995 and from July 1995 to June 1996. Hirschhorn Decl. Ex. L, at D00124-125. Finding that the evidence did not support Johnson's remaining claims, however, the Plan Administrator recommended the Pension Subcommittee deny those. *Id.* at D00123-124.

On December 8, 2006, the Pension Subcommittee held a hearing, during which Johnson testified and provided evidence in support of her appeal. Hirschhorn Decl. Ex. M. The Pension Subcommittee issued its written decision on December 15, 2006, granting in part and denying in part Johnson's appeal. Hirschhorn Decl. Ex. N. The decision addressed Johnson's claims pertaining to her service pre-October 1, 1989 and post-October 1, 1989 separately. *Id.* With respect to the post-October 1, 1989 period, the Pension Subcommittee held that Johnson was entitled to an additional two years of credit for her service, as recommended by the Plan Administrator. *Id.*

The Pension Subcommittee denied Johnson's claims pertaining to her service pre-October 1, 1989. *Id.* First, the decision lists the defects in Johnson's position that the 1979 W-2 form issued by the Mt. Pleasant School District represents a deduction for a contribution to the Plan: (1) Mt. Pleasant School District is a New York State public school district, which is wholly separate from the JCCA, (2) the W-2 form shows that Johnson earned non-covered wages in 1979 from Mt. Pleasant School District, and that Federal and New York State taxes were withheld, (3) the W-2 form also shows that Johnson was not eligible to participate in the school's

6

pension plan. *Id.* The decision notes that the lack of FICA deductions on this W-2 form does not signify that the amount shown was a pension contribution because certain government entities, such as the Mt. Pleasant School District, were not required to participate in the Social Security system at that time. *Id.* Moreover, a separate JCCA W-2 form prepared for Johnson in 1979 shows that Johnson was not participating in the Plan. *Id.*; *see also* Ex. L.

The decision then discusses the available evidence that contradicts Johnson's claim that she had requested to join the Plan in 1977, and then again in 1987. *Id.* First, Johnson would not have signed the Waiver in March 1989, if she intended to actively participate in the Plan between 1978 and 1989. *Id.* Second, Johnson never protested "the fact that her 1979 JCCA W-2 Form stated that she was not eligible to participate in the Plan." *Id* (emphasis in original). Finally, the Pension Subcommittee found that the human resources person, whom Johnson claims told her she would automatically be placed into the non-union pension plan, had credibly denied Johnson's contention because the non-union part of the Plan did not come into existence until October 1, 1989. *Id.* Based on the available evidence, and the same Plan provisions relied upon by the Initial Claims Reviewer, the Pension Subcommittee granted Johnson two additional years for her service post-1989, but denied her request for additional credit for her service pre-1989. *Id.* This appeal followed.

## DISCUSSION

Although the complaint removed from the state court does not address the ERISA statute, and the plaintiff's summary judgment brief is not a model of clarity, it appears that plaintiff asserts a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and a claim for breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority

7

to determine eligibility for benefits or to construe the terms of the plan." *Conkright v. Frommert*, 130 S.Ct. 1640, 1646 (2010).  When "the terms of a plan grant discretionary authority to the plan administrator," a deferential arbitrary and capricious standard of review applies.  *Id.*; *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)).  Moreover, where a denial of benefits is characterized "as a breach of fiduciary duty," as in this case, it "does not necessarily change the standard a court would apply when reviewing the administrator's decision to deny benefits."  *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996).

Under the terms of the Plan here, "[t]he determination of the Pension Subcommittee, which shall be made by such Subcommittee in its sole discretion based upon the Plan documents, as to any question of interpretation shall be final, binding and conclusive on all interested persons including, but not by way of limitation, Employees, Participants, their Beneficiaries, heirs, distributees and personal representatives and any other person claiming an interest in the Plan."  Hirschhorn Decl. Ex. A § 14.2; Ex. B § 14.2.  Because the Plan clearly delegates to the Pension Subcommittee the authority to interpret its provisions, the deferential arbitrary and capricious standard of review applies to plaintiff's claims under both provisions of the ERISA statute.  Under this standard, an administrator's decision to deny ERISA benefits may be overturned "'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow[;] thus[,] we are not free to substitute our own judgment for that of [the insurer] as if we were considering the issue of eligibility anew.'" *Hobson*, 574 F.3d at 83-84 (quoting *Pagan,* 52 F.3d at 442) (alterations in original).

Having thoroughly reviewed the administrative record in this case and all additional evidence the parties provided, I find that there is nothing arbitrary or capricious about the Pension Subcommittee's decision.  The decision is supported by substantial evidence, and it is

clear from both the hearing transcript and the decision that the Pension Subcommittee carefully considered each piece of evidence in rendering its decision.

Although Johnson relies heavily on the 1979 W-2 form issued by the Mt. Pleasant School District, she does not provide any credible evidence to show that the JCCA and the Mt. Pleasant School District were one entity or that the W-2 form represents the amounts the JCCA deducted from her pay as pension contributions. She also does not provide any evidence to prove her allegation that it was the JCCA that sent her the 1979 W-2 form issued by the Mt. Pleasant School District. All the available evidence indicates that Johnson was not participating in the Plan prior to October 1, 1989: (1) there is no evidence of any contributions Johnson made to the Plan, as was required prior to October 1, 1989; (2) the March 1989 Waiver indicates Johnson was not participating in the Plan at that time; (3) the 1979 W-2 form issued by the JCCA indicates that Johnson is not participating in the Plan;[2] and (4) the letter from the human resources person denies telling Johnson that she would be automatically placed in the Plan when she was rehired as non-union employee in 1987. Because Johnson fails to provide sufficient evidence to make out her claim, the UJA is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

Johnson also claims that the defendant has not yet adjusted her pension to give her the two additional years of service that the Pension Subcommittee credited her. Pln.'s Br. 2. However, the evidence in the record indicates that she has already received credit for these two years. *See* Hirschhorn Decl. Ex. F.

---

[2] During the December 8, 2006 hearing, Mr. Neil Kleinhandler, a member of the Pension Subcommittee panel, attempted to explain to Ms. Johnson that her 1979 W-2 issued by the JCCA indicates that she was not participating in the Plan. He explained, "every employer, including your employer, . . . in 1979 was mandated, they had to answer a question, 'Is this particular employee a participant in the pension plan or not? Yes or no?' They must answer that. They answered no. They gave you that form." *See* Hirschhorn Decl. Ex. M, at 59:21-24. Ms. Johnson, however, refused to accept this explanation, and responded, "They hid the little pension that they took out on that W-2 so they answered no." *Id.* at 59:25-60:2.

9

## CONCLUSION

The defendant's motion for summary judgment is granted.

**SO ORDERED.**

Brooklyn, New York
March 19, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge